**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**Amy Jacobson**,

    *Plaintiff*,

    v.

**Board of Education of the City of Chicago**, **Kristi Eilers**, *individually*, **Amundsen Local School Council**, **Elizabeth Burgess**, **Robert Farster**, **Nathan Hutcheson**, **Sarah Makela**, **Amy Paulson**, and **Marla Williams** *in their individual capacities*,

    *Defendants*.

Case No: 1: 26-cv-5108

## <u>COMPLAINT</u>

Plaintiff Amy Jacobson ("Plaintiff" or "Amy") was terminated from her position as the Amundsen High School's Varsity Volleyball Head Coach ("Coach") because she deigned to express a political opinion at odds with the Board of Education of the City of Chicago, Amundsen's Local School Council, and those entities administrators during the 2024 President Campaign Season.

## <u>The Parties</u>

1. Plaintiff Amy Jacobson is an individual, resident, and citizen of Chicago, Illinois.

2. Amy served as member of the Varsity Volleyball Program at Amundsen High School from July 2019 until the effective date of her termination on Tuesday, August 27, 2024.

3. Amy is an employee of Chicago Public Schools but, she is <u>not</u> a member of any union; she does <u>not</u> have any administrative recourse for her termination.

4. Amy is also an award-winning journalist and worked for, *inter alia*, WMAQ-TV NBC 5 covering Chicago's news and politics as well as WJBK-TV in Detroit, Michigan; KVIA-

1

TV in El Paso, Texas; KOLD-TV in Tucson, Arizona; and KSAX-TV in Alexandria, Minnesota. In 2008, Amy joined WLS-AM as a contributor to both the Roe Conn Show and the Mancow & Cassidy Show.

5. Amy joined AM 560 in 2010, where at all times relevant, she was a host of Chicago's Morning Answer (the "Answer") with Dan Proft ("Proft").

6. Defendant Board of Education of the City of Chicago (the "Board") is a body politic and corporate, organized under the State of Illinois School Code, 105 Ill. Comp. Stat. § 5/34-1. It operates the Chicago Public School ("CPS") system including Amundsen High School.

7. Defendant Kristi Eilers ("Eilers") is the Principal of Amundsen High School. She is sued in her official and individual capacities.

8. Defendants Board of Education of the City of Chicago and Kristi Eilers are the "Amundsen Defendants."

9. Amundsen Local School Council (the "LSC") is authorized by the state legislature to 'achieve these priority goals, the general assembly intends to make the individual local school the essential unit for educational governance and improvement and to establish a process for placing the primary responsibility for school governance and improvement in furtherance of such goals in the hands of parents, community residents, teachers, and the school principal at the school level.' Per Illinois School Code: 105 Ill. Comp. Stat. § 5/34-1.01.B.

10. Defendant Elizabeth Burgess ("Burgess") is the Chair of the LSC. She is sued in her official and individual capacities.

11. Defendant Robert Farster ("Farster") is the LSC's FOIA & OMA Officer. He is sued in his official and individual capacities.

12. Defendant Nathan Hutcheson ("Hutcheson") is a member of the LSC. He is sued in his official and individual capacities.

13. Defendant Sarah Makela ("Makela") is the Vice Chair of the LSC. She is sued in her official and individual capacities.

14. Defendant Amy Paulson ("Paulson") is a member of the LSC. She is sued in her official and individual capacities.

15. Defendant Marla Williams ("Williams") is the Secretary of the LSC. She is sued in her official and individual capacities.

16. Defendant LSC as well as Defendants Elizabeth Burgess, Robert Farster, Nathan Hutcheson, Sarah Makela, Amy Paulson, and Marla Williams are the "LSC Defendants."

#### JURISDICTION AND VENUE

17. The Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and § 1343 for claims for deprivation of Plaintiff's constitutional rights under 42 U.S.C. §§ 1983 and § 1988.

18. The Court has subject matter jurisdiction over supplemental matters pursuant to 28 U.S.C. § 1367.

19. The Court has personal jurisdiction over Defendants because each of the Defendants either reside within the District or are organized within the District and currently do business within the Northern District of Illinois.

20. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

#### STATEMENT OF FACTS

3

21. On Thursday, August 22, 2024, the Answer aired a segment discussing the 2024 Democratic National Convention and Governor Tim Walz's speech accepting the 2024 Democratic VP nomination.

22. During this segment Proft discusses Governor Walz's son Gus Walz's reaction to his father's speech.

23. Amy added that Gus Walz exclaimed: "That's my dad!" but declined to mock Gus Walz.

24. Throughout the balance of the Thursday, August 22, 2024 Segment, Amy and Proft discussed various topics, including *inter alia* support for both tickets, Oprah's support for the Democratic ticket, and Robert F. Kennedy's abandonment of his presidential campaign.

25. On Friday, August 23, 2024, during the Answer, Dan and Amy apologized for discussing Gus Walz's unusual emotional reaction and noted that they did not have complete information concerning his intellectual divergence.

26. Thereafter, on Friday, August 23, 2024, Eilers called Amy into a meeting and noted that she had received a number of e-mails via Amundsen's website concerning the Thursday, August 22, 2024 Segment,

27. Upon information and belief, these comments did not come from parents of Amundsen students but from members of the public and were vulgar in nature.

28. During that same Friday, August 23, 2024 Meeting, Eilers acknowledged that she had heard the segment and that she recognized that Amy did not drive the discussion of Gus Walz.

29. Amy advised Eilers that, had she been aware of Gus Walz's condition, she would never have allowed Proft to discuss his unusual emotional reaction and Eilers agreed.

4

30. During that same Friday, August 23, 2024 Meeting, Eilers advised Amy that she had spoken with the head of CPS Sports and been advised she could suspend Amy from her position within Amundsen, terminate her, or allow Amy to remain.

31. Eilers continued to tell Amy that she decided to have Amy remain in her position.

32. Eilers concluded the meeting by advising Amy that everyone within the Amundsen school "loved her" and that she "had done an amazing job with the Volleyball program."

33. As Amy was leaving Eilers' office, Eilers also informed Amy that she does have a right to free speech.

34. On Monday, August 26, 2024, in response to a call from the Chicago Tribue, Amy called CPS's Executive Director of Media Relations, Mary Ann Fergus and asked if CPS had given the Tribune a quote regarding the Thursday, August 22, 2024 Segment.

35. Mary Ann Fergus replied: "we did not because no infraction had been committed."

36. Later on Monday, August 26, 2024, Amy received a telephone call from Eilers and was informed "[a] lot has changed over the weekend."

37. Amy was told that the Thursday, August 22, 2024 Segment had appeared on Reddit and that Eilers had no choice but to terminate her employment as a result of the Thursday, August 22, 2024 Segment.

38. Amy was enroute to Amundsen High School at the time of the call from Eilers and met Eilers in her office upon her arrival.

39. When Amy arrived at Eilers' office she was met by Eilers and other members of the School's faculty.

40. There, Amy was informed again that she was being terminated but that Eilers and others told her they would prefer for her to resign on her own accord rather than them terminating her employment.

41. Amy was told that she would remain the Volleyball coach for several days – through the first several games and until a suitable replacement could be found.

42. What followed was a surreal discussion about who Amy thought was most capable of replacing her.

43. Amy was allowed to Coach her team on Monday, August 26, 2024 in their victory over Kennedy High School.

44. On Tuesday, August 27, 2024, during Volleyball practice, Eilers approached Amy, told her to step into a nearby unoccupied classroom, and informed her that it would be her last day coaching at the school; Amy was allowed to stay on the premises and assist the Freshmen team in their game against DePaul Prep. High School.

45. Eilers told Amy that the LSC and the LSC Defendants wanted her gone; that the LSC and the LSC Defendants determined who the principal was; and therefore, she had to terminate Amy.

46. The LSC Defendants, in their individual capacities, colluded and conspired to cause Amy's termination as reprisal for her exercising her Right to Free Speech and Free Association in violation of the First Amendment to the United States Constitution.

47. Upon information and belief, the LSC Defendants informed Eilers that if she and the Amundsen Defendants did not terminate Amy, the LSC and the LSC Defendants would remove Eilers from her role as principal.

48. On Wednesday, August 28, 2024, Amy was allowed to bid farewell to her team, take pictures with the girls, and explain that she would no longer be their coach or involved with the Volleyball Program.

49. Following Amy's farewell to her team, she sought out Eilers to ask about the identity of the parents who complained about the Thursday, August 22, 2024 Segment and Eilers informed Amy that she could not find them in the system.

50. Before Amy left the school, Eilers informed her "its not like I'm going to put you on a do not hire list[,]" Eilers continued "once a Viking, always a Viking."

51. Thereafter, All Defendants added Amy to a "Do Not Hire List" which interfered with and continues to interfere with her employment and future employment.

52. As stated above, Amy was an employee of CPS and her employment was subject to the terms of an employment agreement (the "Employment Agreement").

53. The Employment Agreement provided for, *inter alia*, Amy's rate of pay and the standard pay period in which she would receive her wages.

54. During the term of her employment, Amy would be paid on a [weekly/bi-weekly/monthly/bi-monthly basis] and would be reimbursed for those reasonable expenses which were necessary for her employment and approved by Defendants.

55. At the time of her termination, Amy was due approximately One Thousand Two Hundred Dollars ($1,200.00) for hours worked and expenses incurred in August 2024.

56. The sum of approximately One Thousand Two Hundred Dollars ($1,200.00) was due and payable at the end of the period but, Amy did not receive her outstanding wages.

57. At no time since her termination has Amy been paid her outstanding wages or the previously approved and payable expenses.

<u>COUNT I</u>
**Claim Pursuant to 42 U.S.C. § 1983**
*Violation of Plaintiff's First Amendment Rights to Free Speech Against all Defendants*

58.    Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as if stated herein.

59.    The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 270 (1964). The government can neither prohibit speech nor seek reprisal for speech even if many people find that speech unpleasant or distasteful.

60.    On Thursday, August 22, 2024, Amy was engaged in activity protected by the First Amendment. Specifically, comments and criticisms of the 2024 Democratic National Convention and its nominee for the Vice Presidency.

61.    Amy Jacobson's speech hosting the Answer as well as the Thursday, August 22, 2024 Segment is a protected activity under the First Amendment to the U.S. Constitution.

62.    Amy Jacobson was terminated from her position at Amundsen High School as a direct result of her participation in the Thursday, August 22, 2024 Segment discussing and criticizing Governor Tim Walz and his son Gus Walz.

63.    Amy Jacobson's termination by the Amundsen Defendants at the direction of the LSC Defendants for speech the LSC Defendants disagreed with and/or is critical of their preferred political party.

64.    As a result of her engaged in activity protected by the First Amendment, Amy Jacobson was terminated from her position at Amundsen High School.

65.     Amy Jacobson termination from her position at Amundsen High School is retaliatory action designed to quell and quash speech that the LSC Defendants disagree with and/or is critical of their preferred political party.

66.     The termination of one's employment is a deprivation that is likely to deter first amendment activity in the future.

67.     Defendants violated 42 U.S.C. § 1983 when it violated Amy Jacobson's the First Amendment Rights to Free Speech when they terminated her from her employment in retaliation for her engagement in a protected activity.

**COUNT II**
**Claim Pursuant to 42 U.S.C. § 1983**
*Violation of Plaintiff's First Amendment Rights to Free Association Against all Defendants*

68.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 57 as if stated herein.

69.     "The right to freedom of association—though not specifically mentioned in the Constitution—grows out of the freedom to speak, to worship, and to petition the government. Those rights could not be protected unless a 'correlative freedom to engage in group effort toward those ends' is also guaranteed." Klug v. Chicago Sch. Reform Bd. of Trustees, 197 F.3d 853, 857 (7th Cir. 1999).

70.     Amy Jacobson's association with Dan Proft and Chicago's Morning Answer is a protected association under the First Amendment to the U.S. Constitution.

71.     Dan Proft is a renown republican political commentator and activist; Chicago's Morning Answer is a conservative talk show in Chicago, Illinois and speaks to a Republican audience.

72.     Amy Jacobson's hosting the Answer, affiliation with Dan Proft and the Republican Party is a protected activity under the First Amendment to the U.S. Constitution.

73.    Amy Jacobson was terminated from her position at Amundsen High School as a direct result of her affiliation and association with Dan Proft and the Republican Party.

74.    Amy Jacobson's termination by the Amundsen Defendants was at the direction of the LSC Defendants for association with individuals and political parties the LSC Defendants disagreed with and/or opposed.

75.    As a result of her engagement in associations protected by the First Amendment, Amy Jacobson was terminated from her position at Amundsen High School.

76.    Amy Jacobson's termination from her position at Amundsen High School is retaliatory action designed to quell and quash political associations that the LSC Defendants disagree with and/or oppose.

77.    The termination of one's employment is a deprivation that is likely to deter first amendment activity in the future.

78.    Defendants violated 42 U.S.C. § 1983 when it violated Amy Jacobson's the First Amendment Rights to Free Association when they terminated her from her employment in retaliation for her engagement in a protected activity.

**COUNT III**
**Claim Pursuant to 29 U.S.C. § 206**
*Violation of the Fair Labor Standard Act*

79.    Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as if stated herein.

80.    Plaintiff was an employee of CPS under the Fair Labor Standard Act, and her employment was governed by an employment agreement.

81.    Plaintiff was not paid for days worked prior to her termination and, as a result, was paid substantially less than the federal minimum wage.

82.    As a result, Defendant CPS is in violation of the Fair Labor Standard Act.

10

<u>**COUNT IV**</u>
**Claim Pursuant to 820 Ill. Comp. Stat. 115/1, *et seq.***
*Violation of the Illinois Wage Payment and Collection Act*

83.     Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as if stated herein.

84.     Plaintiff was an employee of CPS under the Illinois Wage Payment and Collection Act.

85.     Plaintiff's employment was at all times governed by contract, an enforceable employment agreement.

86.     Plaintiff was not paid for days worked prior to her termination and is due final compensation under the terms of her employment agreement.

87.     Defendant CPS has not paid Plaintiff her final compensation.

88.     As a result, Defendant CPS is in violation of the Illinois Wage Payment and Collection Act.

<u>**COUNT V**</u>
**Claim Pursuant to 820 Ill. Comp. Stat. § 105/1, *et seq.***
*Violation of the Illinois Minimum Wage Law*

89.     Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as if stated herein.

90.     Plaintiff was an employee of CPS as defined by the Illinois Minimum Wage Law, and her employment was governed by an employment agreement.

91.     Plaintiff was not paid for days worked prior to her termination and, as a result, was paid substantially less than the Illinois minimum wage.

92.     As a result, Defendant CPS is in violation of the Illinois Minimum Wage Law.

<u>C<small>OUNT</small> VI</u>
**Claim Pursuant to 820 Ill. Comp. Stat. § 130/0.01, et seq.**
*Violation of* Illinois Prevailing Wage Act

93.     Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as if stated herein.

94.     Plaintiff was an employee of CPS as defined by the Illinois Minimum Wage Law, and her employment was governed by an employment agreement.

95.     Plaintiff was not paid for days worked prior to her termination and, as a result, was paid substantially less than the Illinois minimum wage – the prevailing wage under Illinois Law.

96.     As a result, Defendant CPS is in violation of the Illinois Prevailing Wage Act.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully request that this Court:

a.     Enter a judgment declaring that Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution;

b.     Enter a judgment declaring that Defendant Chicago Public Schools are in violation of the Fair Labor Standard Act, Illinois Wage Payment and Collection Act, Illinois Minimum Wage Law, and the Illinois Prevailing Wage Act.

c.     Issue an injunction preventing Defendants from continued retaliatory conduct, removing Amy Jacobson from the "No Not Hire" list, and prohibiting further unconstitutional conduct;

d.     Award Plaintiff compensatory damages in an amount to be determined at trial but not less than $100,000.00;

e.     Award Plaintiff prejudgment interest on all compensatory damages;

12

f.       Award Plaintiff civil penalties under Illinois Wage Payment and Collection Act, Illinois Minimum Wage Law, and the Illinois Prevailing Wage Act, in an amount to be determined at trial but, not less than $5,000,000.00

g.       Award Plaintiff punitive damages in an amount to be determined at trial but, not less than $5,000,000.00;

h.       Award Plaintiff attorney's fees and costs under 42 U.S.C. § 1988, the Fair Labor Standard Act; the Illinois Wage Payment and Collection Act; the Illinois Minimum Wage Law; and the Illinois Prevailing Wage Act; and

i.       Grant such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: May 2, 2026                    Respectfully Submitted:

By:  /s/ *Adam Florek*

Adam Florek
**FLOREK LAW, LLC**
552 Seventh Ave., Suite 601
New York, New York 10018
Tel: (929) 229-2268
E-mail: aflorek@florekllc.com

Edward "Coach" Weinhaus, Esq.
**LegalSolved, LLC**
11500 Olive Blvd., Suite 133
Saint Louis, Missouri 63141-7126
Tele: (314) 580-9580
E-mail: eaweinhaus@gmail.com